```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Jillian Virginia Lagasse

    v.                                     Civil No. 17-cv-212-JD
                                            Opinion No. 2018 DNH 083

Nancy Berryhill, Acting Commissioner
Social Security Administration


## O R D E R

Jillian Lagasse sought judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of Social Security, that granted benefits for only a closed period of disability.[1] The magistrate judge issued a report and recommendation to grant Lagasse's motion to reverse, deny the Acting Commissioner's motion to affirm, and to remand the case for an award of benefits. The Acting Commissioner filed an objection to the report and recommendation, Lagasse did not file a response to the objection.

## Standard of Review

On referral of a dispositive motion, a magistrate judge issues proposed findings for the disposition of the motion in a report and recommendation. 28 U.S.C. § 636(b)(1)(B). The parties then have an opportunity to object to the report and

---

[1] Lagasse sought disability insurance benefits under Title II and supplemental security income under Title XVI.

recommendation and to respond to an objection. Fed. R. Civ. P. 72(b)(2). The court conducts a de novo review of any part of the report of recommendation that has been objected to and may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1); accord Fed. R. Civ. P. 72(b)(3).

Background

In April of 2013 when she was twenty-nine years old, Lagasse was diagnosed with endocarditis, aortic valve vegetation, severe aortic regurgitation, and pleuritic chest pain. She received medical care for those conditions, and psychiatric treatment because of increased anxiety and depression. She had aortic valve replacement surgery on June 21, 2013, at Brigham and Women's Hospital. She continued to experience anxiety after her surgery, with panic attacks, depression, drug use and abuse, and emergency hospitalizations.

On October 13, 2013, Lagasse underwent an urgent procedure to remove and replace the aortic valve. During the procedure, Lagasse suffered a brain hemorrhage (cerebrovascular accident) that caused a loss of sensation and loss of fine motor control on her left side. The medical records indicate that she continued to be treated for physical and mental issues.

Lagasse applied for social security benefits in 2014, alleging an onset of disability as of April 2, 2013. She claimed disability based on the cerebrovascular accident and its effects including left-sided weakness, endocarditis and chest wall pain, valvular heart disease, fibromyalgia, asthma, intermittent left hand tremors, migraine headaches, obesity, major depressive disorder, generalized anxiety disorder, attention deficit and hyperactivity disorder, personality disorder, and sleep disorder. A hearing was held before an ALJ on March 15, 2016.

The ALJ issued a decision on April 8, 2016, in which he found that Lagasse had been disabled between April 2, 2013, and December 8, 2015, but that the disability ended on December 9, 2015. In support, the ALJ found that Lagasse had severe impairments from April 2, 2013, through December 8, 2015, due to "status post cerebrovascular accident, valve defect, depression, anxiety, a personality disorder and polysubstance abuse" and that she could perform light work with certain limitations, but would miss work three or four days each month. Doc. 7-2, at 19 & 22. The ALJ found that as of December 9, 2015, Lagasse had the same severe impairments and the same residual functional capacity except that due to medical improvement she would no longer be absent three or four times each month. Based on that assessment, the ALJ found that Lagasse was no longer disabled as

of December 9 and found a closed period of disability.  When the Appeals Council denied review, the ALJ's decision became the final decision of the Acting Commissioner.

Lagasse sought judicial review and moved to reverse the decision.  Lagasse argued that the ALJ erred in finding medical improvement as of December 9, 2015, because there was no supporting medical opinion, and the ALJ made the finding based on his own review of medical data.  Lagasse also argued that the ALJ had misinterpreted the medical records and improperly weighed the medical opinions, which did not show medical improvement in December of 2015.  In her motion to affirm, the Acting Commissioner argued that substantial evidence supported the decision.  Lagasse filed a reply.

The magistrate judge found that the ALJ erred in finding medical improvement by December 9, 2015, addressing issues not raised by Lagasse in her motion.  Specifically, the magistrate faulted the ALJ for relying on Lagasse's activities (rather than medical records) earlier in 2015, during the period of disability, to find medical improvement.  The magistrate also faulted the ALJ for relying on Lagasse's medical records in December and January to show medical improvement when the number of medical visits could support an inference of continued disability due to absenteeism.  Based on the errors found, the

4

magistrate recommended that the case be reversed and remanded for an award of benefits, rather than for further proceedings.

Discussion

In her objection to the report and recommendation, the Acting Commissioner argues that the magistrate impermissibly drew her own inferences from the medical evidence, contrary to the ALJ's inferences, to conclude that substantial evidence of medical improvement was lacking. The Acting Commissioner also argues that even if the decision is reversed, the case should not be remanded for an award of benefits.

A. Medical Improvement

Once a claimant is found to be entitled to disability benefits, the Acting Commissioner must decide whether the disability is continuing. 20 C.F.R. § 404.1594(a).[2] That process is usually conducted in separate proceedings resulting in separate decisions. In this case, however, the ALJ found a period of disability, followed by improvement that resolved the disability, which is called a closed period of disability.

---

[2] For purposes of this case, the pertinent regulations governing disability insurance benefits at 20 C.F.R. Part 404 are the same as the pertinent regulations governing supplemental security income at 20 C.F.R. § 416, and therefore, the court will cite only Part 404 regulations. See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989).

5

As the magistrate judge explained in the report and recommendation, it is unclear whether the medical improvement standard applies in a case involving a closed period of disability found in a single decision. See Report & Recommendation, doc. no. 17, at 13, n.14 (citing Huse v. Colvin, 2014 WL 1125361, at *1, n.1 (D.N.H. Mar. 20, 2014)). The Acting Commissioner and the parties have assumed that the medical improvement standard does apply here, and the court will apply that standard here without deciding whether it would apply in every case of a closed period of disability.

In the process of determining whether medical improvement has occurred that would end a period of disability, the Acting Commissioner must decide "if there has been any medical improvement in [the claimant's] impairments(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work." Id. Medical improvement means any decrease in the medical severity of impairments. § 404.1594(b)(1). "[A] determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the] impairments." Id. Even if the Acting Commissioner finds that medical improvement has occurred, she "must also show that [the claimant is] currently able to engage in substantial gainful activity before [she] can find that you are no longer disabled." Id.

The ALJ found that from April 2, 2013, through December 8, 2015, Lagasse would be absent from work three to four days per month because of her valve defect and replacement procedures, the cerebrovascular accident, and treatment related to those conditions. The ALJ also found that Lagasse's depression, anxiety, personality disorder, and substance abuse were severe impairments and that she had been hospitalized twice for episodes of decompensation during that period. The ALJ found that Lagasse had improved by December 8, 2015, so that although she had the same residual functional capacity to do light work with certain limitations she no longer had the limitation of three to four absences a month.

The ALJ explained that he found medical improvement based on the treatment notes from Lagasse's appointment with Physician's Assistant Christina Dickey on December 8, addressing Lagasse's insomnia issues. The ALJ also cited Lagasse's activities earlier in 2015 as indications of improvement and treatment notes after December 8, generated during emergency room visits and continued treatment for insomnia that showed normal results on examination. The ALJ interpreted that evidence to show that Lagasse's status post cerebrovascular accident and valve defect had improved as of December 8, 2015, to the point that she would no longer be absent from work three or four days each month. Oddly, despite his impression of

7

medical improvement, the ALJ did not find that Lagasse's residual functional capacity had improved with respect to exertional level or other functional limitations, only that she would no longer be absent from work because of her impairments.

1. <u>Opinion Evidence</u>

As Lagasse pointed out in her motion to reverse, there is no medical opinion that supports the ALJ's interpretation of the record to show medical improvement as of December 8, 2015. Dr. Yager did a physical evaluation of Lagasse in January of 2015 and found that while she was physically able to do sedentary work, with limitations because of her left hand issues and inadequate balance, but questioned her mental status for work and thought that her condition would not improve for a year. Dr. Lockward, Lagasse's psychiatrist, wrote in September of 2015 that Lagasse would be absent from work more than four days each month and that she would not be able to work for six months from that time, when she should be reevaluated. The ALJ agreed with Dr. Lockward's opinion up to December 8 but gave it little weight thereafter because "it is now clear that the claimant is doing better."

An ALJ may choose among various medical opinions and need not have a "super evaluator" to provide a single opinion on the

issue of functional capacity.[3] Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).  On the other hand, however, an ALJ must assess properly the weight to be given to medical opinions based on a variety of factors. § 404.1527(c).  In addition, an opinion that is based on a review of only part of the record cannot provide substantial evidence to support the ALJ's residual functional capacity finding if other evidence, not reviewed, supports the claimant's limitations.  Alcantara v. Astrue, 257 Fed. Appx. 333, 334 (1st Cir. 2007); Padilla v. Barnhart, 186 Fed. Appx. 19, 20 (1st Cir. 2006); McGowen v. Colvin, No. 15-CV-329-JD, 2016 WL 1029480, at *6 (D.N.H. Mar. 15, 2016).

To the extent the ALJ relied on expert opinion in making his second residual functional capacity assessment, he cited Dr. Fairley's opinion which was done in February of 2015 and Dr. Martin's opinion dated December 9, 2014.  The ALJ disagreed with Dr. Fairley's opinion that Lagasse could do full time work from

---

[3] To the extent the magistrate judge suggests that the standards applicable to a residual functional capacity analysis do not apply in the context of medical improvement, the court disagrees in the circumstances of this case.  Here, the ALJ assessed a second residual functional capacity to support the finding that Lagasse was no longer disabled following the closed period of disability.  In addition, the court disagrees that an ALJ is qualified to consider and interpret raw medical data in the process of comparing prior and current medical evidence to determine whether medical improvement has occurred.  See Report & Recommendation, doc. no. 17, at 16, n.16.

April 2, 2013, to February of 2015, but found "Dr. Fairley's assessment reasonable as of December 2015." The ALJ also gave great weight to the opinion of the state agency psychologist, Dr. Martin, a year before the date when the ALJ found medical improvement and does not address absenteeism.

Neither Dr. Fairley nor Dr. Martin reviewed the medical records pertinent to medical improvement as of December 9, 2015. As a result, neither provided an opinion about Lagasse's functional capacity in December of 2015. A considerable number of medical records were generated after both of those opinions, which included Dr. Lockward's opinion about Lagasse's absenteeism. None of the opinion evidence supports the ALJ's finding that Lagasse's absenteeism ended on December 8, 2015. The ALJ did not explain why the subsequent medical evidence, after Dr. Fairley and Dr. Martin provided their opinions, was not material. See Giandomenico v. Social Security Admin., 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017).

   2. Medical Records

Instead of opinion evidence, the ALJ relied primarily on treatment notes in December of 2015 and January of 2016 to find that Lagasse had improved so that absenteeism would no longer be a functional limitation. The December 8 appointment, however, was for treatment of insomnia. That examination did not include

10

a focus on Lagasse's valve defect or her cerebrovascular accident nor did the note say whether or not Lagasse would likely be absent from work due to insomnia or for any other reason.

The treatment notes also show that Lagasse made repeated trips to the emergency room over the next month. Those incidents document that she experienced chest wall pain and other symptoms that were severe enough to make her seek treatment, even if the physical examinations provided some normal results. The hospital treatment notes also do not address absenteeism or functional capacity.

The ALJ interpreted some normal findings in the treatment notes to mean that Lagasse's functional capacity had improved to the extent that she would no longer be absent three or four times each month. To the extent the examination notes show good or normal results, the decision does not explain the ALJ's ability to translate those results into a finding of medical improvement and a lack of continuing absenteeism.[4] Given the

---

[4] The parts of the treatment notes that the ALJ cites were made by providers based on physical examinations. The notes are medical findings and not raw medical data, such as x-rays, MRI results, laboratory test reports. See Piper v. Berryhill, 2018 WL 1392908, at *2 (D.N.H. Mar. 20, 2018). Nevertheless, the notes did not provide functional findings, and the ALJ's interpretation of those notes to show functional improvement so that Lagasse would no longer require absences from work required medical knowledge of Lagasse's underlying complex medical issues, the treatment she had undergone, and her then current

11

complexity of Lagasse's physical impairments, medical improvement is a conclusion that is beyond the ALJ's ability as a lay person and does not involve a common sense judgment about functional capacity. See Nguyen v. Chater, 172 F.3d 31, 25 (1st Cir. 1999); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996).

In addition to her physical impairments, the ALJ also found severe impairments due to depression, anxiety, personality disorder, and substance abuse. As the ALJ found, Lagasse experienced episodes of decomposition during the closed period because of substance abuse and suicidal ideation. The ALJ's reference to examinations in August of 2015 that showed some normal results and that Lagasse was alert during her December appointment for insomnia adds little to support for a finding of improved functional capacity. The ALJ also discussed Lagasse's substance abuse and drug-seeking behavior. Lagasse's significant mental impairments further undermine the inferences the ALJ took from the normal physical findings that he highlights from the treatment notes.

Therefore, substantial evidence is lacking to support the ALJ's second residual functional capacity assessment in which he

---

medical condition that is beyond the understanding of a lay person.

found that Lagasse had medically improved as of December 8, 2015, and was no longer disabled.

B.  Remand for an Award of Benefits

The magistrate judge recommends that the case be remanded for an award of benefits, based on the conclusion in Attmore v. Colvin, 827 F.3d 872 (9th Cir. 2016).[5]  The Acting Commissioner objects to that result.

In Attmore, the Ninth Circuit determined that the ALJ erred in finding that the claimant had medically improved.  Id. at 879.  The court reversed the judgment of the district court and directed the court to remand the case to the ALJ "for the calculation and award of benefits."  Id.  The court provided no analysis or explanation as to why an award of benefits was the appropriate result in that case.

In the First Circuit, a direction to the Acting Commissioner to award benefits is rarely appropriate. "[O]rdinarily[,] the court can order the agency to provide the relief it denied only in the unusual case in which the underlying facts and law are such that the agency has no

---

[5] In her motion to reverse the decision of the Acting Commissioner, Lagasse asked that she be awarded benefits or that the case be remanded for further hearing but did not provide any argument in support of an order to award benefits.  Ordinarily, the court disregards issues raised without developed argument in support.  Coons v. Indus. Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010).

13

discretion to act in any manner other than to award or to deny benefits." Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001). A court may order the agency to award benefits only "where the proof of disability is overwhelming or where the proof is very strong and there is no contrary evidence." Id.  Otherwise, "when the agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court ordinarily should remand the case to the agency." Id.

This case does not present extraordinary circumstances that would support a remand for an award of benefits.  Instead, remand is necessary for further proceedings because the ALJ did not show that substantial evidence existed to support his functional capacity assessment as of December 9, 2015, and provided an insufficient explanation for finding medical improvement.  On remand, the ALJ may find it necessary to have medical opinion evidence to address Lagasse's functional capacity as of December 8, 2015, and thereafter.

## Conclusion

For the foregoing reasons, the report and recommendation (document no. 17) is rejected.

The decision of the Acting Commissioner is reversed for the reasons provided in this order, and the case is remanded pursuant to Sentence Four of § 405(g) for further proceedings.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

                                     Joseph A. DiClerico, Jr.
                                     United States District Judge

April 18, 2018

cc: Janine Gawryl, Esq.
     Robert J. Rabuck, Esq.